IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


THERESA F. NILES,

      Plaintiff,

vs.                                                     Case No. 04-4060-SAC

AMERICAN AIRLINES, INC.,
TRANSWORLD AIRLINES, LLC
UNIVERSAL WELFARE BENEFIT PLAN,
METROPOLITAN LIFE INSURANCE COMPANY, INC.,

      Defendants.


MEMORANDUM AND ORDER

      This case comes before the court on cross motions for

summary judgment filed by all parties, and related motions.

**Summary of facts**

      The stipulations in the pretrial order provide a factual outline of

the case.  Niles is a former employee of Trans World Airlines, Inc. ("TWA")

who last worked for TWA on a consistent basis prior to November 14,

1996.  American Airlines, Inc. ("American")  is the sponsor and Plan

Administrator of the Plan, which is self-insured.  The Plan provides

long-term disability benefits to its participants, among whom are former

TWA employees, including Niles, who were receiving disability benefits on

the date American acquired certain assets of TWA.

On November 14, 1996, Niles sustained injuries in a car accident.  Beginning on May 9, 1997, Niles began receiving long term disability benefits.  American subsequently made MetLife the third-party administrator for the Plan.  MetLife thereafter determined that Niles was not entitled to continue receiving benefits under the Plan after December 31, 2002.  Niles asked MetLife to reconsider its decision, and within the ten days required for such review MetLife confirmed its original decision to discontinue benefits.  Niles then timely appealed MetLife's decision to American's Pension and Benefits Committee ("PBAC"). The PBAC affirmed MetLife's decision to deny benefits and informed Niles of that decision by letter dated November 24, 2003.  This suit followed stating two claims:  one for benefits due, and the other for breach of fiduciary duty.

**Motion for leave to file supplemental response** (Dk. 84)

The court first examines plaintiff's motion to file a supplemental response to defendants' replies in support of their motions for summary judgment.  Plaintiff's supplemental response seeks only to incorporate by reference the arguments and evidence she submitted in support of her motion for summary judgment.  Although surreplies are not permitted

absent order of the court, no opposition to this motion has been filed, and the court's ordinary practice when considering cross-motions is to consider all evidence, as plaintiff requests.  Accordingly, this motion shall be granted.

**The applicable Plan**

The parties have agreed in the pretrial order that plaintiff's claim for "benefits due" should be resolved by the court , Dk. 35, p. 4-5, and that they "do not believe that there are any factual issues that will preclude the entry of summary judgment."  Dk. 35, p. 12.  Nonetheless, the parties do not agree even on the fundamental fact of which Plan governs plaintiff's claim for benefits due.  Defendants contend that the April 9, 2001 Plan (Dk. 49, Exh. B) governs the issues, while plaintiff counters that her claim is instead governed by the January 1,1989 Plan (Dk. 52, Exh. 6, AMA 00725-00745).

Plaintiff contends that the 2001 Plan was never sent to her by MetLife and was not relied upon by MetLife when it denied plaintiff's benefits.  (Dk. 78, p. 1.)  She states that it was the 1989 Plan which Met Life sent to her on or about March 7, 2003 in response to her request for her claim file, that the language of the 1989 Plan was cited by CIGNA in its

July 2001 letter and that the language of the 1989 Plan was relied on by MetLife in its December 31, 2002 termination decision.

Defendants do not dispute plaintiff's assertions above, but instead contend that plaintiff relied upon the 2001 Plan in her memorandum in support of her motion for summary judgment (Dk. 52), and should therefore be barred by the doctrine of judicial estoppel from claiming that the 2001 Plan language does not apply.   The court finds this doctrine to be inapplicable, since plaintiff is not seeking to contradict a previous position on which she has previously prevailed. *See Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005).

Defendants additionally contend that the pretrial order defines the Plan as the 2001 Plan.  The court agrees.  The pretrial order "measures the dimensions of the lawsuit," *Hullman v. Bd. of Trustees of Pratt Cmty. Coll.*, 950 F.2d 665, 668 (10th Cir.1991), and "control[s] the subsequent course of the action unless modified by a subsequent order." Fed. R. Civ. P. 16(e).  Although the pretrial order fails to define " the Plan" by date, it does contain two identical parentheticals on its first page which refer to the "TWA Airlines LLC Universal Welfare Benefit Plan," as "(the Plan)."  The only Plan in the record bearing that caption is the Plan dated April 9, 2001.

4

The 1989 Plan is captioned "TWA Benefits," and specifies its formal name within the plan language as "The TWA Group Benefits Plan for Management Employees."  Dk. 52, Exh. 6, AMA 00744.  The pretrial order contains no issue regarding the identity of the Plan.  Accordingly, the court finds that the 2001 Plan and not the 1989 Plan controls.

**The Proper party defendant**

The court next addresses MetLife's contention that it is not a proper party defendant as to plaintiff's benefits due claim.  MetLife claims that it is not the named fiduciary as that term is defined under ERISA, is not the Plan Administrator, provided only an intermediary review and did not conduct the final review or make the final decision, and is not vested with discretion to determine eligibility for benefits on disputed or denied claims. Dk. 45.  Plaintiff's response does not challenge this conclusion as to her benefits due claim.  Dk. 72.

Title 29, United States Code, section 1132(a)(1)(B)  establishes who can bring a civil action under ERISA and for what purposes such an action can be brought. This section allows a participant or beneficiary to bring an action to recover benefits due, to enforce rights under the plan, or to clarify rights under the plan.  It does not specify against whom such an

action may be brought.  Nonetheless, because of the type of relief available, the proper defendant to an ERISA action brought by plan participants to recover benefits due is the entity which controls the ultimate decision to pay or not pay benefits.  *Cf, Miller v. Pension Plan for Employees of Coastal Corp.*, 780 F. Supp. 768, 773 (D. Kan. 1991), *aff'd on other grounds*, 978 F.2d 622 (10th Cir.1992), *cert. denied*, 507 U.S. 987 (1993) (granting summary judgment for a defendant employer in an action to recover benefits "for the additional reason that it is not a proper party"); *Palka v. Theodore M. Hylwa, M.D., Inc.*, 1986 WL 22380, *4 (D. Kan. 1986) (finding a mere advisory role insufficient to constitute "control" of the pension plans and as such, advisors or agents are not proper parties to an ERISA action). The parties point to no language in the plan which vests MetLife with any control over the ultimate determination of disputed or denied claims.

The Plan specifically designates "TWA Airlines LLC" as the plan administrator.  Dk. 49, Exh. B, AMA 00212.   Where, as here, a plan specifically designates the plan administrator, then that individual or entity is the plan administrator for purposes of ERISA.  29 USC § 1002(16)(A). See *McKinsey v. Sentry Ins.*, 986 F.2d 401, 404-05 (10th Cir.1993)

(rejecting theory of de facto administrator in a claim under § 1132(c)).

Additionally, the administrative services agreement between American and MetLife unambiguously reflects the understanding between those defendants that it is American and not MetLife who is the named fiduciary for purposes of § 503 of ERISA and whose responsibility it is to make the final decision on a disputed claim.  In its section captioned "ERISA Fiduciary Responsibility," the services agreement states:

> American is the named fiduciary as that term is defined under ERISA and Plan Administrator for all purposes including providing a Participant whose claim for benefits has been denied a full and fair review of the decision denying the claim...On a disputed or denied claim, American has the discretionary authority to determine eligibility for benefits, to construe the terms of the Plan and to determine the validity of charges submitted for reimbursement under the Plan. American's decision on appeal of the denied or disputed claim shall be the final review.")

*See* Dk. 44, Exh. A, AMA 01121, 01127. *See also Terry v. Bayer Corp.*, 145 F.3d 28, 35-36 (1st Cir. 1998); *See also Kodes v. Warren Corp.*, 24 F. Supp.2d 93, 101 (D. Mass. 1998); *Nicholson v. Prudential Insurance Company of America*, 235 F. Supp.2d 22, 26-27 (D. Maine 2003) (dismissing claim for benefits against third-party administrator). Accordingly, the court finds that because MetLife is a third party service provider and is not a fiduciary of the plan, it is not amenable to a suit under

7

§ 1132(a)(1)(B).

**The appropriate standard of review**

"A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *see DeGrado v. Jefferson Pilot Financial Ins. Co.*, 451 F.3d 1161, 1167 (10th Cir. 2006).  The language of the plan determines whether the court must apply the arbitrary and capricious standard of review or whether the court must review the determination de novo.  Accordingly, the administrative services agreement noted above is not relied upon by the parties or this court.

The parties dispute whether the benefit plan gives the administrator fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, so as to bring it within the arbitrary and capricious standard of review.  Defendants point to several provisions of the Plan: one which provides that PBAC's decision on appeal "will be final, binding and conclusive," and another which provides that the PBAC has the "sole authority to adopt and/or amend benefit plans," and in

8

conjunction with others, has "the discretion to adopt such rules, forms, procedures, and amendments it determines are necessary for the administration of employee benefit plans according to their terms, applicable law and regulation, or to further the objectives of the employee welfare plans."  Dk. 48, p. 12.

The above quoted plan language lacks clarity and leaves doubt about discretionary authority, in contrast to those plans whose vesting of discretion in the administrator is clear.  *See e.g.*, *Kansas v. Titus*, 452 F. Supp. 2d 1136 (D. Kan. 2006) (applying the arbitrary and capricious standard where plan gave administrator full discretionary authority to interpret and apply all Plan provisions and the power to make factual findings and determinations, including all issues concerning eligibility for and determination of benefits); *Staats v. Goodyear Tire & Rubber Co.*, 2006 WL 2707969, *2 (W.D. Okla. 2006) (applying the arbitrary and capricious standard where the plan gave the administrator "the sole and absolute discretionary authority and power to interpret plan provisions and make factual determinations in administering and carrying out the provisions of the Plan, including, but not limited to, the authority and power (a) to determine all questions relating to eligibility for the amount of any

benefit to be paid under the Plan, (b) to determine all questions pertaining to claims for benefits and procedures for claim review, (c) to resolve all other questions arising under the Plan, including any questions of construction····"); *Crowe v. Lucent Technologies Inc. Pension Plan,* 2006 WL 2494565, *1 (W.D. Okla. 2006) (applying arbitrary and capricious standard where plan granted the administrator discretion to interpret it); *Cameron v. American Elec. Power Services Corp.*, 2006 WL 2456820, *4 (N.D. Okla.2006) (same, where Plan expressly granted the Plan administrator and the Plan's Benefits Appeal Committee discretion to interpret the terms of the Plan and determine eligibility).

Defendants additionally rely upon language providing that "upon receipt of satisfactory proof, disability income benefits, as provided by the Plan, will be paid by [the plan's third-party administrator.]"[1]  Dk. 48, p. 11.  This language does not refer to the PBAC and thus does not help defendant's position.  Further, the language requires "satisfactory proof" but not "proof satisfactory to the administrator," a distinction noted by the

---

[1]The Plan states "CIGNA," in lieu of "third-party administrator," but the parties agree that in operation, it was MetLife and not CIGNA, who was responsible for initially adjudicating and paying claims for benefits under the Plan.  Dk. 48, p. 11, n. 3; Dk. 71, p. 8.  PBAC is separate and distinct from MetLife and from CIGNA.

Tenth Circuit, in stating:

> Most circuits that have considered the issue have concluded that the mere requirement to submit satisfactory or adequate proof of eligibility does not confer discretion upon an administrator. *See Herzberger*, 205 F.3d at 331; *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089-90 (9th Cir.1999) (benefits provided "upon receipt of satisfactory written proof"); *Bounds v. Bell Atl. Enters. Flexible Long-Term Disability Plan*, 32 F.3d 337, 339 (8th Cir.1994) (claims will be paid "after [the administrator] receives adequate proof of loss"). To say that proof must be "satisfactory" may be to say only that it must meet some objective standard-what a reasonable person would find to be satisfactory. *See Herzberger*, 205 F.3d at 330-31; *Kearney*, 175 F.3d at 1089.  Construing any ambiguity in plan language in favor of the beneficiary, courts are likely to interpret the term "satisfactory" as conveying such an objective standard, without granting any deference to the factual determinations of the plan administrator. *See Kearney*, 175 F.3d at 1089-90.

*Nance v. Sun Life Assur. Co. of Canada,* 294 F.3d 1263, 1267 (10th Cir. 2002) (finding deferential review  proper because the plan stated that the grant or denial of a particular benefit is to be determined by "proof satisfactory to the administrator.")  Despite the fact that the Tenth Circuit has been "comparatively liberal in construing language to trigger the more deferential standard of review under ERISA," *Nance*, 294 F.3d at 1268, the court finds that the "satisfactory proof" language does not assist defendants.  As the Tenth Circuit cautioned: "... plan drafters who wish to convey discretion to plan administrators are ill-advised to rely on language that is borderline in accomplishing that task." *Nance*,  294 F.3d 1268, n. 3,

11

citing *Herzberger v. Standard Ins. Co.*, 205 F.3d 327,  331 (7th Cir. 2000)

(commending to employers "safe harbor" language drafted by the court).

Finding no other evidence in the Plan of discretion vested in the

administrator, the court shall review the denial of benefits challenged under

§1132(a)(1)(B) under a de novo standard.  *See DeGrado v. Jefferson Pilot*

*Financial Ins. Co.*, 451 F.3d 1161, 1167 (10th Cir. 2006).  Under this

standard, the court does not give deference to PBAC's determination that

plaintiff was not entitled to benefits.  *See Hoover  v. Provident Life and Acc.*

*Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002).  Instead, the Court considers

"the proper interpretation of the plan and whether an employee is entitled

to benefits under it." *Perry v. Simplicity Engineering*, 900 F.2d 963, 966-67

(6th Cir.1990).

When conducting a de novo review, the court must take a fresh

look at the administrative record to determine whether the decision of the

plan administrator is correct.  If the court applies the arbitrary and

capricious standard, the court is "limited to the 'administrative record'-the

materials compiled by the administrator in the course of making his

decision."  *Allison v. Unum Life Ins. Co. Of America*,  381 F.3d 1015, 1021

(10th Cir. 2004), *quoting Hall v. Unum Life Ins. Co. of Am.*, 300 F.3d 1197,

12

1201 (10th Cir. 2002).  That limitation is less stringent where, as here, the

de novo standard of review is used.  *See Hall*, 300 F.3d at 1202.  Although

de novo review is generally restricted to the administrative record, this

court is permitted to supplement that record when circumstances clearly

establish that additional evidence is necessary to conduct an adequate de

novo review of the benefit decision.  *Id.*  "The party seeking to supplement

the record bears the burden of establishing why the district court should

exercise its discretion to admit particular evidence by showing how that

evidence is necessary to the district court's de novo review."  *Id.*,  300 F.3d

at 1203.

**Motions to strike exhibits** (Dk. 85, 88)

Having determined which plan controls, the court's standard of

review and its effect upon the court's admission of evidence, the court turns

its attention to defendants' motions to strike the majority of the exhibits

plaintiff submitted in support of her summary judgment motion, namely

plaintiff's exhibits 2-5, and 7-11.  Defendants contend that plaintiff's

Exhibits 2-5 lack foundation, have not been properly authenticated, were

not included in the administrative record so are outside the court's scope of

review, and are hearsay.  Defendants contend that plaintiff's Exhibits 7-10

are untimely because they were not included in plaintiff's Rule 26

disclosures.  Defendants additionally challenge the foundation,

authentication, and hearsay nature of plaintiff's Exhibits 7-11.

The court first examines defendants' contention that plaintiff's

exhibits 7-10  were not disclosed in plaintiff's Rule 26 disclosures,[2] so

should be stricken.  Plaintiff contends that her Exhibit 7 is defendant's

complete claim file which was listed in the Rule 26 disclosures, but tacitly

concedes that her Exhibits 8-10 were not so disclosed.

> The rule requiring automatic disclosure is clear.
> Pursuant to Fed. R. Civ. P. 26(a)(1)(B), a party must automatically
> disclose "a copy of, or a description by category and location of, all
> documents, data compilations, and tangible things that are in the
> possession, custody, or control of the party and that the disclosing
> party may use to support its claims or defenses, unless solely for
> impeachment." Further, Rule 26(e)(1) requires a party to supplement
> or amend its disclosures and discovery responses if it learns the
> information disclosed or the response is somehow incomplete or
> incorrect.

*Aerotech Resources, Inc. v. Dodson Aviation, Inc.*,  91 Fed. Appx. 37,

44-45, 2004 WL 27738,*7 (10th Cir. 2004).

To ensure compliance with the initial disclosure requirements,

Rule 37(c)(1) provides that "[a] party that without substantial justification

---

[2]Plaintiff's initial Rule 26 disclosures listed the sole relevant
documents as "Claim File in the possession of Defendants."  Dk. 87, p. 3.

fails to disclose information required by Rule 26(a) or 26(e)(1)..., is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."  The preclusion sanction of Rule 37(c)(1) is automatic.  "A district court may, in its discretion, consider an untimely affidavit for "cause shown" if the failure to timely file the affidavit "was the result of excusable neglect." Fed. R. Civ. P. 6(b)(2)."  *Essence, Inc. v. City of Federal Heights*,  285 F.3d 1272, 1288 (10th Cir. 2002).  Plaintiff has not attempted to show excusable neglect or substantial justification for her failure to disclose her Exhibits 8-10. *Compare Silchia v. MCI Telecommunications Corp.*, 942 F. Supp. 1369, 1377 (D. Colo.1996) (finding failure to disclose evidence until after the discovery deadline had passed "substantially justified" under Rule 37(c) where plaintiff had no knowledge of the evidence until after the deadline passed, faxed a copy of it to defendant the same day they received it, and defendant failed to take any action at that time.)  Therefore, plaintiff's Exhibits 8-10 are untimely and  inadmissible.

        Independent reasons additionally compel exclusion of exhibits 8 and 9.  Plaintiff's exhibit 8 is a curriculum vitae of Jerold L. Hildre. Plaintiff has not responded to defendants' motion to strike this exhibit,

except to state that it "contains the professional qualifications of plaintiff's

vocational expert, Jerold Hildre, plaintiff's expert."  Dk. 93, p. 8.  The court

agrees that this CV is irrelevant to the present motion because this

person's qualifications are not in issue.

Plaintiff's exhibit 9 is a chart consisting of a summary of 32

court decisions which plaintiff represents to be "additional case law and

argument in support of plaintiff's motion for summary judgment and in

response to defendant's arguments."  *Id.*  Plaintiff contends solely that she

is not precluded from submitting argument in this manner.  The court

disagrees.  Arguments of counsel are not evidence and cannot be

disguised as such by including them as purported exhibits to a summary

judgment motion.  The only proper place for written arguments of counsel

is in a brief where they are subject to the various rules that govern them,

such as page limits and service.  Including case law and arguments of

counsel as exhibits, rather than in the body of counsel's brief, is

impermissible not only because such matters are not evidence, but also

because such a practice could subvert the procedural rules to the prejudice

of opposing counsel and the court.

Exhibit 11 is an affidavit of plaintiff, stating that "in the normal

course of her business as a disabled person," she requested, received and
kept in her medical file twelve pages of documents (TN 18-29) regarding
her functional capacity examination (FCE) from a Ransom Memorial
Hospital employee, and gave them to her attorney.  Attached to plaintiff's
affidavit are the twelve pages alluded to.   Among other objections,
defendants raise a hearsay objection to this document.  "Hearsay
testimony that would be inadmissible at trial cannot be used to defeat a
motion for summary judgment[.]" *Adams v. American Guar. & Liab. Ins.
Co.*, 233 F.3d 1242, 1246 (10th Cir.2000).  The court finds that the
challenged documents are hearsay, and that being a "disabled person" is
not a "regularly conducted business activity" for purposes of the business
records exception to the hearsay rule.[3]  Plaintiff offers no other exception to
the hearsay rule.  Accordingly, the court sustains defendant's hearsay
objection to Exhibit 11, and does not reach other  contentions.

Plaintiff offered Exhibits 10 and 11 to authenticate her Exhibits
2-5, Dk. 92, p. 2, which  are not self-authenticating and lack proper
authentication.  Although Exhibits 2 -5 were timely produced to defendants,

---

[3]The term "business" is broadly defined to include a "business,
institution, association, profession, occupation, and calling of every kind,
whether or not conducted for profit," Fed. R. Evid. 803(6), but does not
stretch so far as to include plaintiff's disability status.

17

the court shall disregard them because the court has excluded Exhibits 10 and 11.  S*ee Aklagi v. Nationscredit Financial*, 196 F. Supp. 2d 1186, 1191 (D. Kan. 2002).

Plaintiff's Exhibit 6, (Dk. 52) is represented to be the claim file produced to plaintiff by defendants American Airlines and the Plan. Defendants do not challenge this document.  Plaintiff's Exhibit 7 (Dk. 82, TN 39 et seq) contains many of the same documents as Exhibit 6, but is plaintiff's appeal letter and accompanying exhibits which she presented to PBAC on appeal.  Plaintiff submits this exhibit to show the "proper order" of the claim file and contends that "the manner in which defendants maintained plaintiff's claim file constituted a breach of their fiduciary duties, procedural irregularities, and bad faith."  Dk. 92, p. 2.  The court finds that this theory of breach of fiduciary duty is not actionable since it is not included in the Pretrial Order.  *See* Dk. 35, plaintiff's contentions, factual issues, legal issues.[4]  Nonetheless, the court finds it necessary to review

---

[4]Plaintiff's breach of fiduciary duty claims are that defendants improperly relied on the FCE, improperly relied on an inaccurate surveillance report, denied plaintiff an opportunity to respond to the report of a non-examining physician, failed to obtain an IME by a specialist in the applicable field, failed to give her a "full and fair review" of her claim, denied her claim for benefits, and failed to follow plan documents.  Dk. 35.  None of these claims can be reasonably construed to have put defendants on notice that any claim related to the order in which the claim file documents

18

the documents submitted in support of plaintiff's appeal to PBAC, which are properly authenticated by its accompanying affidavit, and declines to strike it.

**Motions for summary judgment**

Having ruled on the above preliminaries, the court is prepared to examine the substance of the motions for summary judgment.  Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." ' Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998).  In applying this standard, the court must examine the evidence and reasonable inferences therefrom in the light most favorable to the non-moving party. *See Gaylor v. Does*, 105 F.3d 572, 574 (10th Cir. 1997).

**Uncontradicted facts**

Plaintiff Theresa Niles is a former employee of Trans World

_____

were kept or to the exclusion of certain documents from  that file.

19

Airlines, Inc.

("TWA"), who last worked for TWA on a consistent basis before November 14, 1996, on which date she was injured in a car accident.   She was diagnosed the following month with osteoarthritis of the cervical spine, chronic pain syndrome, and lumbar strain by a physician at the Mayo Clinic who opined that it would be "very difficult for her to perform the duties of her previous job, inspecting airline vehicles."  Dk. 52, AMA 965.  In January of 1998, plaintiff was found to be disabled by the Social Security Administration, whose decision stated in part that "claimant is incapable ...of performing any of her past relevant work or any other work given her credible pain."  Dk. 52, AMA 960-62.  Thereafter, plaintiff and her treating physician, Dr. Spratt, consistently represented to defendants that plaintiff was unable to work due to matters including degenerative disc disease, medications, headaches, chronic neck pain and limited ability to look down or bend over.

In 1997, after an applicable waiting period, Niles began receiving benefits under a TWA plan  that provided long-term disability benefits.[5]   The 2001 Plan provides long-term disability benefits to its

_____

[5]CIGNA served as the claims administrator.  American Airlines, Inc. later acquired certain assets of TWA.

participants, among whom are former TWA employees including plaintiff,

who were receiving disability benefits as of the time that American acquired

assets of TWA.  In pertinent part, the 2001 Plan provides that "monthly

disability income will be paid to you if you become Totally Disabled from

any occupation . . . ."  Dk. 49, Ex. B at AMA 00113.  The 2001 Plan defines

"Total Disability" as follows:

> An Employee will be considered Totally Disabled during any

period when, as

>> a result of Injury, Sickness or pregnancy, the Employee is
>> completely unable to perform the duties of his occupation and
>> is not performing any other work or engaging in any other
>> occupation or employment for wage or profit....

Dk. 49, Ex. B at AMA 00074. The 2001 Plan is self-insured. American is

the Plan's sponsor and Administrator, while MetLife is the Plan's third-party

administrator.

> MetLife thereafter determined that Niles was not entitled to

continue receiving benefits under the Plan after December 31, 2002,

finding that "[i]n summary, your tested and observed functionality does not

support an inability to be gainfully employed." *See* Dk. 49, Ex. D at ML

00530. MetLife's letter of denial to plaintiff stated:

> According to Plan provisions,

"If you become Totally Disabled before age 61, you will receive monthly income payments up to 60 months from the date you became totally disabled, provided you remain unable to perform all duties of your occupation.  If, at the end of this period, you are unable to engage in any occupation or employment for which you are qualified - or for which you may reasonably become qualified - by training, education or experience, you will continue to receive monthly income payments until you recover or reach age 65, whichever occurs first.

Dk. 49, Exh. D, at ML 00527.[6]

In reaching its decision, MetLife relied on a Functional Capacity Evaluation ("FCE") administered to plaintiff, a formal Transferable Skills Analysis and Labor Market Survey, and a surveillance report and video. See Dk. 49, Ex. D at ML 00528-30; see also Ex. A. at § 5(a), ¶ 3. MetLife engaged a third-party vendor, Isernhagen Work Systems ("Isernhagen"), to perform plaintiff's FCE. On behalf of Isernhagen, Dan Van Buskirk, OTR, administered the FCE tests to Niles on October 30 and 31, 2002. See Ex. E (FCE Report) at ML 00188-89.

Based on the FCE, Mr. Van Buskirk, determined that plaintiff

---

[6]  MetLife's denial letter did not cite to a particular plan which contains this language, and the court has not found this language in the 2001 Plan. This language is, however, included in another TWA plan dated in 1989, which  contains a definition of "Total Disability" substantially similar to that in the 2001 Plan. See Dk. 52, Exh. 6, AMA 00731, 00733.

could perform jobs classified by the Department of Transportation as "Sedentary" or "Light" for eight hours a day for a five-day workweek, without limitations.  Mr. Van Buskirk determined that plaintiff could perform jobs classified by the Department of Transportation as "Medium" for eight hours a day for a five-day workweek with certain lifting restrictions. Ex. E at ML 00193.

Based in part on a Transferable Skills Analysis ("TSA"), MetLife determined that plaintiff was suited to perform at least three alternate categories of jobs labeled by the Department of Transportation as "Quality Control Technician", "Transportation Maintenance Supervisor", and "Inspector, General." See Dk. 49, Ex. F at ML 00177.
MetLife retained a third party, CorVel Corporation, to perform a Labor Market Survey to determine whether such jobs were available within a 60-mile radius of plaintiff's home in Ottawa, Kansas. The Labor Market survey determined that one or more of such jobs were available. See Dk. 49, Ex. G at ML 00095-102.

MetLife additionally hired an independent private investigator in September of 2002 to conduct surveillance on plaintiff.  The independent private investigator conducted surveillance on a subject residing at 1645 S. Elm Street,

Ottawa, Kansas, for three days. Dk. 49, Ex. H at ML 00199, ML 00201. The

subject of the surveillance was "a 50-year-old female, 5'8" tall, approximately 165

lbs., with shoulder length brown hair, thinning on top" Ex. H at ML 00201. The

investigator spoke with the subject's neighbor, who confirmed the subject's

identity as the plaintiff, and indicated that "claimant and her husband owned a farm

in Lebo, Kansas." *Id.*  The investigator observed the subject operating a vehicle

with Kansas license plate number PTY 221.  *Id.*  The investigator observed the

subject of his surveillance engaging in physical activity, which is described in his

surveillance report (Ex. H at ML 00200), and recorded in a videotape (see Ex. I).

Namely, the subject spent a substantial amount of time cleaning and washing her

car, and performing all physical tasks attendant thereto, as indicated in the video.

Plaintiff asked MetLife to reconsider its decision, and within the ten

days required for such review MetLife confirmed its original decision to

discontinue benefits.  MetLife's letter dated January 24, 2003 explained, "[t]he

LTD claim decision to terminate was based primarily upon the results of the

Functional Capacities Evaluation and the Labor MarketSurvey. The

surveillance done was a supplemental tool . . . . As such, our decision to

terminate your claim remains."  Dk. 49, Ex. K at AMA 00239.

Plaintiff then timely appealed MetLife's decision to American's

24

Pension and Benefits Committee ("PBAC").  Prior to making its decision,

the PBAC retained an independent physician, Robert D. Petrie, M.D., of

Elite Physicians, Ltd., to consider the information and provide his opinion

as to whether Plaintiff was disabled from performing any occupation. *See*

Dk. 49,Ex. M. (Dr. Robert D. Petrie's Report).  Dr. Petrie reviewed the

medical records, reports and other information included in plaintiff's claim

file. Dr. Petrie observed the following:

> In this particular case, Ms. Niles' subjective pain complaints and
> inability to pursue gainful employment are simply inconsistent with
> objective findings.  Degenerative disc disease in the cervical spine as
> noted by the consulting physicians at the Mayo Clinic, is longstanding
> in nature and previously did not interfere with Ms. Niles' activities. In
> addition, the functional capacities evaluation showed that Ms. Niles
> was capable of working in a light to medium category of employment
> on a full time basis. These objective findings reported by the physical
> therapist are refuted by the attending physician, but his objections
> are based purely on subjective claims of Ms. Niles.

Dk. 49, Ex. M at AMA 01111.

Dr. Petrie indicated that "Ms. Niles certainly did have the ability

as of December 31, 2002 to perform light to moderate work activities and

was not totally disabled according to the definition of the LTD plan."  Dk.

49, Ex. M at AMA 01113.  He further noted that "[a]ny restrictions related to

the chronic pain syndrome are those which Ms. Niles herself elects and are

not based on any objective evidence in the record." Id. Dr. Petrie concluded

that "Ms. Niles does not have evidence of any other medical condition, which would preclude sedentary light level employment as of December 30, 2002, as defined by the LTD plan." *Id.* at AMA 01114.

The PBAC then affirmed MetLife's decision to deny benefits and informed Plaintiff of that decision by letter, quoting the language of the 2001 Plan.  Dk. 49, Ex. C, AMA 00018.  In reaching its decision, the PBAC considered evidence submitted by Plaintiff, the independent physician evaluation by Dr. Petrie, and the additional evidence developed by MetLife (the FCE, the Transferable Skills Analysis, and the Labor Market Survey).

The PBAC did not rely on the surveillance video or report in making its decision to deny Plan benefits to Plaintiff because plaintiff and her counsel had challenged the truth of assertions made therein, including that plaintiff lived in a single story duplex, owned, rented or worked for a farm, and was in Ottawa, Kansas on Friday, September 6-8th, 2002. Ex. C at AMA 00030.

Thereafter, plaintiff filed this case.  During discovery, plaintiff's deposition was taken wherein she admitted the following: 1) that at or about the time of the surveillance, she drove an older model gray Buick LeSabre, with KS license plate number PTY221 which matched the car and

26

license plate observed in the surveillance video tape (Ex. O at 27:7-29:11);

2) that her physical description, at or about the time of the surveillance,

matched the physical description of the subject of the surveillance (Ex. O at

21:15-25); 3) that she washed her car on September 5, 2002 at a car wash

resembling the one depicted in the video; 4) that, on September 5, 2002,

she was physically able to do all of the things that the person in the

surveillance report and video did, including washing a car.  Ex. O at 36:6-9;

49:15-25; 52:22-53:1; see Ex. I.

### Benefits due claim

Plaintiff contends that the PBAC's decision to deny benefits

was in error because of the following reasons: 1) it relied on the opinion of

Dr. Petrie, a non-examining physician, and gave plaintiff no opportunity to

respond to his findings; 2) defendants improperly relied on a functional

capacity examination (FCE); 3) MetLife relied on an inaccurate surveillance

report; and 4) defendants failed to obtain an independent medical

examination (IME) by a specialist. These shall be examined in turn.

### Opinion of non-examining physician

Plaintiff first contends that PBAC's reliance upon the opinion of

Dr. Petrie, a non-examining physician, was error.  Plaintiff contends that

she was denied the requisite "full and fair review" of her claim[7] because Dr.

Petrie failed to consider all the evidence of record and because plaintiff

had no opportunity to respond to Dr. Petrie's report.  Defendants counter

that Dr. Petrie reviewed all the evidence of record, that plaintiff had every

opportunity to submit whatever information she desired on appeal, and that

there is no requirement that claimants get the final word.

ERISA provides that "every employee benefit shall ⋯ afford a

reasonable opportunity to any participant whose claim for benefits has

been denied for a full and fair review by the appropriate named fiduciary of

the decision denying the claim." 29 U.S.C. § 1133(2) (emphasis added).

The requirements for a "full and fair review" are often stated as follows:

> [R]eceiving a "full and fair review" requires " 'knowing what
> evidence the decision-maker relied upon, having an opportunity to
> address the accuracy and reliability of the evidence, and having the
> decision-maker consider the evidence presented by both parties prior
> to reaching and rendering his decision.' " (Citation omitted.)

*Sandoval v. Aetna Life and Casualty Ins. Co.,* 967 F.2d 377, 382 (10th

Cir.1992).  But an administrator's substantial compliance with § 1133 is

sufficient to satisfy the ERISA procedural requirements. *Hickman v. GEM*

---

[7]*See* 29 CFR  § 2560.503-l(h) (requiring appeal to take into account
all records and other information submitted by the claimant relating to the
claim)

*Ins. Co., Inc.*, 299 F.3d 1208, 1215 (10th Cir.2002).

Plaintiff's assertion that Dr. Petrie failed to consider certain evidence is based primarily on the fact that he did not specifically reference certain documents in his nine-page letter dated October 17, 2003. The court does not agree that this compels the conclusion that Dr. Petrie did not consider such documents.  The court has reviewed that letter (Dk. 49, Exh. M) and finds therein no support for plaintiff's contention that "Dr. Petrie's letter, in and of itself, establishes that he failed to consider" all documents submitted by plaintiff.  Dk. 78, p. 8.  To the contrary, the letter does not give rise to a reasonable inference that some documents were not considered, and additionally states that "a thorough review of the medical records was completed."  *Id.*

Furthermore, for purposes of providing plaintiff a "full and fair review" of her claim, the crucial determination is not whether Dr. Petrie considered all the evidence of record, but whether the PBAC did so.  PBAC considered numerous documents other than Dr. Petrie's report in making its determination to affirm the finding of non-disability.   PBAC's decision states that "all the information submitted with Ms. Plaintiff' appeal for claim reconsideration and payment has been evaluated by the [PBAC] ..."  (AMA

29

00018) The PBAC's list of documents which were "submitted in support of

Ms. Plaintiff appeal" (Dk. 49, Exh. C, AMA 00026-27) appears to include

the very items which plaintiff claims were not considered, *i.e.*, Dr. Ira

Fishman's documents dated July of 2002, Jerold Hildre's documents dated

August 14, 2003, and psychotherapist Glen Grunz' documents dated

August 1, 2003.[8]  PBAC's decision specifically references plaintiff's

contentions based upon the same Fishman, Hildre  and Grunz reports,

indicating its awareness of the same.  (Dk. 49, Exh. C, AMA 00024).

Accordingly, the court finds no support for plaintiff's allegation that she was

denied a "full and fair review" of her claim based on Dr. Petrie's alleged

failure to consider all the evidence of record.

        Plaintiff is correct that she  had no opportunity to respond to

Dr. Petrie's report, but a rebuttal or last look by the claimant is not among

the requirements for full and fair review.  *See*  29 C.F.R. §

2560.503-1(listing requirements for plan procedures for a full and fair

review of a claim and adverse benefit determination).  *Forrester v.*

---

[8]Although the parties cite different dates for this document, they
appear to be referencing the same document.  Plaintiff refers to the date of
the medical source statement itself, *i.e.,* May 4, 2003 (Dk. 71, p. 4),while
PBAC refers to the cover letter by Grunz dated August 1, 2003, which
accompanies that medical source statement.

*Metropolitan Life Ins. Co.,* 2005 WL 3429542, *14 (D. Kan. 2005) (finding 29 CFR § 2560.503–1(j)(1), (3) does not require that documents be produced prior to the resolution of the appeal.)*; Metzger v. Unum Life Ins. Co. of America*, (D. Kan. 2006) Dk. 76, Exh. 2 (finding on remand that regulations do not contemplate an opportunity for rebuttal of opinions by independent physicians rendered during the appeals process.)  This court is not free to impose additional regulations where the Secretary has not done so.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003).

The regulations do, however, require ERISA plan fiduciaries to obtain a review by an independent health care professional in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment.  29 C.F.R. § 2560.503-1(h)(3)(iii), (v); (h)(4). This was done.  Had the drafters intended that a claimant be provided an opportunity to review and rebut that independent medical evaluation, they would have expressly stated so in the full and fair procedures requirements.  *Cf. Great-West Life & Ann. Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) ("ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intent to authorize

other remedies that it simply forgot to incorporate expressly.") (internal

quotations and italics omitted).

Lastly, plaintiff's anticipated procedure would pose the specter

of endless review, undermining the finality and certainty of the time periods

established in the regulation.  If a claimant were to review the independent

health care professional's findings, then submit rebuttal containing medical

information, this would be followed by another required administrator's

evaluation by an independent health professional .  As stated in *Forrester*:

> The regulations necessarily raise the possibility that the independent
> health professional reviews will, as here, generate additional medical
> opinions and reports. The position of the plaintiff-that all such reports
> must be produced to a claimant prior to the resolution of the
> appeal-not only finds no support in the regulations themselves, it
> further raises the prospect of a continuing cycle of additional reports
> followed by rejoinders by the claimant followed by additional reports,
> and so is contrary to the regulatory scheme of 29 C.F.R. §§
> 2560.503-1, which seeks to expeditious resolution of appeals.

*Forrester,*  2005 WL 3429542 at *14.  *See also Metzger*, Dk. 76, Exh. 2

(finding the result of endless opinions proposed by plaintiff to be

"ludicrous.")[9]

Running throughout plaintiff's briefs is her complaint that the

_____

[9]Plaintiff's reliance on the case of *Abram v. Cargill, Inc.*, 395 F.3d 882
(8th Cir. 2005), is misplaced because among other significant distinctions,
that case examined claims that predated the effective date of the regulation
at issue here.

administrator improperly rejected the opinion of her treating physician,

Dennis P. Spratt, M.D.  Nothing in ERISA or its regulations "suggests that

plan administrators must accord special deference to the opinions of

treating physicians. Nor does the Act impose a heightened burden of

explanation on administrators when they reject a treating physician's

opinion." *Black & Decker Disability Plan*, 538 U.S. at 831.  As recognized

in *Maniatty v. UnumProvident Corporation*, 218 F.Supp. 2d 500, 504

(S.D.N.Y.2002), it is not "unreasonable for the administrator to conclude

that the only material reason the treating physicians are reaching their

diagnoses was based on their acceptance of Plaintiff's subjective

complaints:  an acceptance more or less required of treating physicians,

but by no means required of the administrator." *Thomas v. Georgia Pacific

Corp.*,  2006 WL 1207610, *6 (E.D.Okla.2006).  Accordingly, even had

plaintiff's physician responded to and contradicted Dr. Petrie's report,

nothing would have compelled the administrator to give that opinion more

weight than Dr. Petrie's opinion.

Plaintiff's treating physician, Dr. Spratt, based his diagnoses

and opinions on plaintiff's subjective complaints, rather than on objective

results of tests or examinations.  Although the Plan does not require

plaintiff to prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce her alleged disabling pain, the PBAC does not err in considering the objective evidence, medical or otherwise, that contradicts plaintiff's subjective allegations of pain.

Plaintiff additionally relies upon the Social Security Administration's finding that she was disabled, but that finding does not bind the PBAC.  *See Holt v. Continental Casualty Co.*, 379 F. Supp. 2d 1157, 1173 (D. Kan. 2005).  Additionally, in contrast to the social security disability review process, nothing in ERISA or its regulations requires the court to accord special deference to the opinions of treating physicians. *Id.*, 379 F. Supp. 2d at 1172.  Furthermore, nothing in the full and fair review process requires PBAC to consider the Social Security Administration's finding.

Plaintiff has not persuaded the court that PBAC failed to consider treating physician Spratt's findings and conclusions.  As indicated in PBAC's letter dated November 24, 2003, and in Dr. Petrie's report, defendants considered the evidence submitted by plaintiff, including information from Dr. Spratt. App. Ex. C at 00022- 23, 00029-30; App. Ex. M

at 01106-07, 01113-14.  Moreover, Dr. Petrie did not ignore Dr. Spratt's

findings and opinions but chose to disagree with them based on other

evidence.  Dr. Petrie's report  provides a factual basis for his

disagreements with Dr. Spratt in stating:

> In this particular case, Ms. Plaintiff' subjective pain complaints and
> inability to pursue gainful employment are simply inconsistent with
> objective findings.  Degenerative disc disease in the cervical spine as
> noted by the consulting  physicians at the Mayo Clinic, is
> longstanding in nature and previously did not interfere with Ms.
> Plaintiff' activities. In addition, the functional capacities evaluation
> showed that Ms. Plaintiff was capable of working in a light to medium
> category of employment on a full time basis. These objective findings
> reported by the physical therapist are refuted by the attending
> physician, but his objections are based purely on subjective claims of
> Ms. Plaintiff.

App. Ex. M at 01111; *See id.*, at 01106-07.  Accordingly, the court finds

PBAC's reliance upon Dr. Petrie's opinion to have been proper.

### Functional capacity examination

Plaintiff next contends that Met Life was improperly involved

with the functional capacity examination ("FCE"), that the FCE was based

on an inaccurate definition of the term "occasional," that the FCE was not

submitted to her treating physician for review and comment before it was

finalized, and that the FCE's findings establish plaintiff's inability to perform

any work activity on a consistent basis.  Plaintiff further contends that the

Labor Market Survey is invalid because it was based on the FCE.

An FCE is commonly recognized as competent evidence in disability cases. *See e.g., Gerdes v. UNUM Provident Corp.*, 37 Fed. Appx. 837, 838, 2002 WL 1251855, *1 (8th Cir. 2002). Plaintiff's contention that the FCE was not submitted to her treating physician for review and comment before it was finalized is subject to the same analysis as plaintiff's similar claim about the independent medical evaluation conducted by Dr. Petrie - a last look by the claimant is simply not required.

Plaintiff's other contentions with respect to the FCE are based on speculation flowing from her interpretation of handwritten notations, arrows or marks whose maker is unidentified and whose meaning is unclear. Speculation does not create a genuine issue of fact and will not preclude the entry of summary judgment. *See Bacon v. Great Plains Mfg., Inc.*, 958 F.Supp. 523, 526 (D. Kan. 1997).

There is no admissible evidence that any defendant had any "improper involvement" with the FCE or any involvement other than ordering it and receiving it. Nothing in the record indicates that defendants received anything other than the completed FCE report (ML00181-ML00193). The report reflects that it was reviewed by

Isernhagen employee Steve McKenney, who concluded that it "met criteria

but needs improvement" (ML00183).  McKenney asked Dan Van Buskirk,

the therapist, to "make clarifications we discussed and complete the PDL

form." (ML00183). But there is no indication that any defendant was

involved in the discussion or in the review, or that  the clarifications

McKenney requested were anything more than the result of Isernagen's

quality control review, designed to produce a clear and accurate report.

Nor is there is any affidavit or testimony from Van Buskirk or anyone else to

support an inference that any defendant suggested that Van Buskirk

change his evaluation of plaintiff.[10]

Similarly, no facts of record support plaintiff's claim that any

defendant mandated that the therapist who conducted the FCE use an

"improper definition" of the term "occasionally." (Plff. Mem., p. 8).  Plaintiff

relies on a statement in the FCE report that "it was explained to this OTR

that the Physical Demand Levels for MetLife Disability uses the 1-5%

category for their occasional level; and that is how it was determined in this

_____

[10]Plaintiff's speculation that Van Buskirk was made to change his
evaluation is based on plaintiff's conjecture from her Exhibits 1 through 5,
most of which the court has found inadmissible due to improper or missing
authentication.  Reliance on unauthenticated documents is insufficient to
create a triable issue of fact.

report." (ML00189). There is no indication, however, that this erroneous[11] explanation came from any defendant.

The court does not agree with plaintiff's contention that the FCE's findings establish plaintiff's inability to perform any work activity on a consistent basis.  The report detailed plaintiff's performance on the various tests conducted. (ML00185-ML00187, ML00190-ML00192). The therapist noted that plaintiff moved slowly, smoothly and cautiously, had good balance, used good body mechanics, tolerated reaching, crawling, kneeling and crouching frequently, and was surprised at how much she could do. (ML00189).  Although the FCE also notes plaintiff's complaints of dizziness, discomfort and nausea, these appear to serve as the bases for plaintiff's limitations in lifting, carrying and trunk flexion. (ML00188). MetLife reviewed the FCE in its entirety, found it to be valid, and identified occupations within both the light and sedentary demand categories that matched plaintiff's job skills. Reliance on the FCE, and resultingly, the Labor Market Survey, was warranted.

**Surveillance report and video**

Plaintiff next alleges that MetLife relied on an inaccurate

---

[11]The form itself shows "occasionally" as referring to three hours in the course of a work day. (ML00190-ML00191).

surveillance report.   Both parties agree that the video and report were not relied upon by PBAC in making its decision.  Because the court has dismissed MetLife as a party to this claim, and the court's review is focused on PBAC's findings and not those of MetLife, the court finds this allegation to be immaterial.

Nonetheless, defendants have asked the court to consider the surveillance video and report, asserting that the video is evidence that plaintiff is not totally disabled.  *See* AMA 30.  Defendants contend this evidence is necessary to the court's review, Dk. 48, p. 24, because plaintiff and her counsel made misrepresentations about the video and report to PBAC and to MetLife.

The parties agree that in September of 2002, MetLife hired an independent private investigator to conduct surveillance on plaintiff.  After conducting surveillance for three days, the investigator submitted a report and videotape showing a person the investigator believed to be the plaintiff engaging in physical activities including washing her car and performing all physical tasks attendant thereto.

Plaintiff challenges the identity of the person in the video and notes inaccuracies in dates and details in the video and/or report, claiming

she was out of town during the dates the surveillance video recorded a

subject washing her car. Nonetheless, plaintiff does not unequivocally deny

that she is the subject shown in the video.  Instead, she states in her

deposition that it could have been she, although she is not convinced that it

is.  She also admits that she washed her car by hand with a high pressure

wand at a car wash resembling the one depicted in the video on or near the

same date as did the subject of the video, and that she was physically able

to do all of the things that the person in the video did.  *See* Dk. 71 p. 6,

SOF 34.[12]  Accordingly, the court finds the video and report admissible for

the limited purpose of demonstrating to the court  the actions plaintiff

admits she was able to do, rather than showing that the subject actually

performing those actions was in fact the plaintiff.[13]

---

[12]Plaintiff unsuccessfully attempts to controvert this fact by addition of
other facts, coupled with citation to pages of her deposition which are not
included in the record presented to this court.

[13]Although plaintiff makes a passing objection to the court's
consideration of her deposition, that objection is expressly based solely
upon the erroneous assumption that the court's standard of review is
arbitrary and capricious, with its corresponding limitation on the scope of
evidentiary review.  Dk. 71, p. 6.  Further, plaintiff herself relies upon and
cites to portions of her deposition in response to defendant's statements of
fact, although most deposition pages plaintiff cites to are not attached to or
part of the record she cites.  Lastly, the court believes, in the exercise of its
discretion, that the evidence is necessary for its de novo review.  Given the
obvious importance of plaintiff's admissions to the question of whether she

Those actions, undertaken for approximately 18 minutes, include exiting the vehicle, opening and closing the hood and trunk of the car, bending frequently at the waist, leaning toward the vehicle and under the hood, leaning down to direct the spray to the undercarriage of the vehicle, squatting down multiple times, extending her arms above the head and over the vehicle, looking down a large percentage of the time, looking up, turning her head side to side, picking up something off the ground, walking around the vehicle, and spraying it with a power sprayer.   All such acts were performed with apparent ease of movement, fluidity, and flexibility and without any hesitation, apparent difficulty or discomfort whatsoever.  A reasonable person viewing the video would conclude that the acts undertaken by the person in the video are facially inconsistent with those that would voluntarily be performed by one totally disabled by chronic pain syndrome, a degenerative neck/disc disease or a limited ability to look down or bend over.

---

was disabled, the court believes this evidence is the type of additional extra-record evidence that would generally be admissible.  *See Hall*, 300 F.3d at 1206-07. Plaintiff's deposition, taken on June 16, 2005, was evidence that  could not have presented in the administrative process, which concluded long before that date.  This evidence therefore falls squarely within one of the grounds for admission.  *See Hall*, 300 F.3d at 1206, citing *Quesinberry, id.* at 1027.

**I**ndependent medical examination

Plaintiff next contends that defendants' failure to obtain an independent medical examination constitutes a procedural irregularity.  The court disagrees.  Independent medical examinations, although helpful, are not required.  *Fought v. Unum Life Ins. Co. Of America,* 379 F.3d 997, 1015 (10th Cir. 2004).  In disability claims  involving an uncommon disease or a conflict of interest, the administrator best promotes the purposes of ERISA by obtaining an independent evaluation, *see* 29 U.S.C. § 1001(b)*; Id,* but neither is alleged in this case.  *Compare Panther v. Synthes (U.S.A.),* 380 F. Supp. 2d 1198 (D. Kan. 2005) (finding conflict of interest, requiring IME).

Plaintiff saw numerous doctors and medical personnel over a period of several years, including several doctors from the Mayo Clinic. *See* App. Ex. M (Dr. Petrie's report referencing Dr. Spratt, Dr. Yaszemski, Dr. Wilson, Dr. Martin, Dr. Beaumier, Dr. Inniss, Dr. Brothers.)   Nothing suggests that seeing another doctor would produce any additional evidence regarding plaintiff's condition.  Plaintiff does not submit any evidence to suggest that an IME was necessary in this case or articulate what additional evidence she hopes to obtain through an IME.  Instead, she

merely argues, without further explanation, that she was entitled to one.

Based upon the court's review of the record, plaintiff received a full and fair review.  The process itself was reasoned and principled. Additionally, the court finds no error in the administrator's denial of disability benefits.  Although there is evidence which might support an award of long-term disability benefits, that evidence is based almost exclusively on plaintiff's subjective claims as to the degree of her disability. Other substantial evidence rebuts the opinion of the insured's treating physician.  Plaintiff's admission that she could perform the acts requisite to washing her car, as demonstrated by the subject in the surveillance videotape, provided some evidence that plaintiff was not totally disabled, as does the additional evidence provided by Dr. Petrie's report, and by the FCE.  Accordingly, summary judgment is warranted on plaintiff's claim for benefits due.

### Fiduciary duty claim

Plaintiff next alleges a separate claim against all defendants[14]

---

[14]MetLife does not contend that it is a not proper party defendant as to plaintiff's fiduciary duty claim.  *See Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 238 (2000) (finding § 502(a)(3)'s authorization to a plan "participant, beneficiary, or fiduciary" to bring a civil action for "appropriate equitable relief" extends to a suit against a nonfiduciary "party in interest").

for equitable relief  under § 502(a)(3).  Her breach of fiduciary duty claims stated in the pretrial order are strikingly similar to her benefits due claims. They are that defendants improperly relied on the FCE, improperly relied on an inaccurate surveillance report, denied plaintiff an opportunity to respond to the report of a non-examining physician, failed to obtain an IME by a specialist in the applicable field, failed to give her a "full and fair review" of her claim, denied her claim for benefits, and failed to follow plan documents.  Dk. 35.

The sole language included in the pretrial order and relied upon by plaintiff regarding her remedy for any breach of fiduciary claim is plaintiff's boilerlate request for "such further relief as the court deems just and equitable."  Dk. 35, p. 8; Dk. 71, p. 19.  This language is insufficient to put defendant on notice that plaintiff seeks injunctive relief under ERISA § 502(a)(3).

Even assuming *arguendo* that plaintiff has adequately stated a claim for equitable relief in the pretrial order, this claim is barred by the exclusive remedy doctrine.  It is well established that  a participant or beneficiary is not permitted to seek relief under the ERISA section

_____

44

authorizing a civil action for an injunction or "other equitable relief" if she

has another adequate ERISA remedy available to her.    *Moore v. Berg*

*Enterprises., Inc.*, 201 F.3d 448, 449 n. 2 (10th Cir. 1999); *Hyde v.*

*Benicorp Ins. Co.*,  363 F. Supp. 2d 1304, 1307 (D. Kan. 2005).

Accordingly, where a petition states a claim under ERISA § 502(a)(1)(B)

and under  ERISA § 502(a)(3), and the former subsection provides plaintiff

adequate remedies, equitable relief per the latter subsection is not

appropriate.  *Hyde*, 363 F. Supp. 2d at 1309.  The Tenth Circuit focuses on

the adequacy of the remedy available under ERISA § 502(a)(1)(B) rather

than on the type of remedy sought under ERISA § 502(a)(3) when

determining if a cause of action exists for equitable relief.  *See Lefler v.*

*United Healthcare of Utah, Inc.,* 2003 WL 21940936, 72 Fed.Appx. 818,

820 (10th Cir. 2003); *Moore*, 201 F.3d at 449 n. 2; *Hyde*, 363 F. Supp. 2d

at 1308.

          The court finds that ERISA § 502(a)(1)(B) gives plaintiff

adequate relief.  Had the court decided that benefits were wrongfully

denied, it could have entered judgment for the amount of the benefits due

with prejudgment interest, *see Frymire v. Ampex Corp.*, 61 F.3d 757, 773

(10th Cir.1995), could have vacated a termination of benefits and ordered

them reinstated, *Johnson v. Dayco Products, Inc.,*973 F. Supp.1255,1266 (D. Kan.1997), and could have clarified the rights to future benefits under the terms of the plan.  *Hyde*,  363 F. Supp. 2d at 1308 -1309.  Plaintiff's contention that defendants will continue to breach their fiduciary duties to plaintiff so should be removed as Plan administrators is unpersuasive. Accordingly, summary judgment in favor of defendants is warranted on this claim.

Having ruled on defendants' motions, the court finds it unnecessary to separately address plaintiff's motion for summary judgment on these same claims, which is necessarily denied.

IT IS THEREFORE ORDERED that plaintiff's motion for leave to file supplemental response (Dk. 84) is granted, that defendants' motions to strike exhibits (Dk. 85, 88) are granted in part and denied in part.

IT IS FURTHER ORDERED that defendant Metropolitan Life Insurance Company, Inc.'s motion for summary judgment (Dk. 44) is granted and that the motion for summary judgment of defendant American Airlines, Inc., Transworld Airlines, LLC,Universal Welfare Benefit Plan (Dk. 47) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary

judgment (Dk. 51) is denied.

Dated this 3rd day of January, 2007, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge